| | |
|---|---|
| UNITED STATES DISTRICT COURT | |
| EASTERN DISTRICT OF CALIFORNIA | |
| NATIONAL ASSOCIATION OF WHEAT GROWERS; NATIONAL CORN GROWERS ASSOCIATION; UNITED STATES DURUM GROWERS ASSOCIATION; WESTERN PLANT HEALTH ASSOCIATION; IOWA SOYBEAN ASSOCIATION; SOUTH DAKOTA AGRI-BUSINESS ASSOCIATION; NORTH DAKOTA GRAIN GROWERS ASSOCIATION; MISSOURI CHAMBER OF COMMERCE AND INDUSTRY; MONSANTO COMPANY; ASSOCIATED INDUSTRIES OF MISSOURI; AGRIBUSINESS ASSOCIATION OF IOWA; CROPLIFE AMERICA; AND AGRICULTURAL RETAILERS ASSOCIATION, Plaintiffs, v. LAUREN ZEISE, IN HER OFFICIAL CAPACITY AS DIRECTOR OF THE OFFICE OF ENVIRONMENTAL HEALTH HAZARD ASSESSMENT; and XAVIER BECERRA, in his official capacity as Attorney General of the State of California, Defendants. | CIV. NO. 2:17-2401 WBS EFB<br><br><u>MEMORANDUM AND ORDER RE: MOTION FOR PRELIMINARY INJUNCTION</u> |

1

----oo0oo----

Before the court is plaintiffs' Motion for Preliminary Injunction. (Docket No. 29.) The court held a hearing on the motion on February 20, 2018.

I. Factual and Procedural History

This case concerns a challenge to California's listing of glyphosate[1] as a chemical known to the State of California to cause cancer, as well as a challenge to California's warning requirements that accompany that listing. Plaintiffs claim, among other things, that the listing and warning requirements violate the First Amendment by compelling them to make false, misleading, and highly controversial statements about their products, and they seek a preliminary injunction on this basis.[2]

Under Proposition 65, the Safe Drinking Water and Toxic Enforcement Act of 1986, Cal. Health & Safety Code §§ 25249.5-25249.14 ("Proposition 65"), the Governor of California is required to publish a list of chemicals known to the State to cause cancer, as determined by, inter alia, certain outside entities, including the United States Environmental Protection

---

[1] Glyphosate is a widely-used herbicide used to control weeds in various settings and is an active ingredient in defendant Monsanto Company's ("Monsanto") product Roundup. Plaintiffs or their members sell glyphosate-based herbicides, use glyphosate in their cultivation of crops that are incorporated into food products sold in California, or process such crops into food products sold in California. (Am. Compl. ¶¶ 9-22.)

[2] Plaintiffs also claim that (1) the listing and warning requirements conflict with the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 343(a) and 346a(n) ("FDCA"), and are thus preempted by federal law, and (2) these requirements violate the Due Process Clause of the Fourteenth Amendment, though they do not seek a preliminary injunction on these other grounds, and the court expresses no opinion as to those allegations.

2

Agency ("EPA"), the United States Food and Drug Administration ("FDA"), and the International Agency for Research on Cancer ("IARC").[3] AFL-CIO v. Deukmejian, 212 Cal. App. 3d 425, 431-34 (3d Dist. 1989) (citing, inter alia, Cal. Labor Code 6382(b)(1)); see also Cal. Code Regs. tit. 27 §§ 25306(m), 25904(b)[4] ("A chemical or substance shall be included on the list [of chemicals known to the state to cause cancer] if it is classified by the International Agency for Research on Cancer" as "carcinogenic to humans" or "[p]robably carcinogenic to humans" and there is "sufficient evidence of carcinogenicity in experimental animals.").[5]

Proposition 65 also prohibits any person in the course of doing business from knowingly and intentionally exposing anyone to the listed chemicals without a prior "clear and

---

[3] The IARC was founded in 1965 as the cancer research arm of the United Nations' World Health Organization, and exists to "promote international collaboration in cancer research." (Zuckerman Decl., Ex. G at 5-6 (Docket No. 49-7).) The United States was a founding member of the IARC and remains a member. (Id. at 27.) The IARC publishes, in the form of "Monographs," "critical reviews and evaluations of evidence on the carcinogenicity of a wide range of human exposures." (Zuckerman Decl., Ex. H at 10 (Docket No. 49-8).)

The other two outside entities named under the Proposition 65 regulations are the National Institute for Occupational Safety and Health, which is part of the Centers for Disease Control, and the National Toxicology Program, which is part of the National Institutes of Health. Cal. Code Regs. tit. 27 § 25306(m).

[4] Several new regulations implementing Proposition 65 take effect August 30, 2018. This opinion refers to the current versions of the regulations unless otherwise noted.

[5] The Office of Environmental Health Hazard Assessment ("OEHHA") is the agency responsible for implementing Proposition 65. Cal. Code Regs. tit. 27 div. 4 ch. 1 Preamble.

3

reasonable" warning, with this prohibition taking effect 12 months after the chemical has been listed. Cal. Health & Safety Code § 25249.6; Deukmejian, 212 Cal. App. 3d at 431-34. Failure to comply may result in penalties up to $2,500 per day for each failure to provide an adequate warning, and enforcement actions may be brought by the California Attorney General, district attorneys, certain city attorneys and city prosecutors, and private citizens who may recover attorney's fees. Cal. Health & Safety Code § 25249.7(b), Cal. Code Regs. tit. 11 § 3201.

In 2015, the IARC classified glyphosate as "probably carcinogenic" to humans based on evidence that it caused cancer in experimental animals and limited evidence that it could cause cancer in humans. (Zuckerman Decl. (Docket No. 49), Ex. H, Preamble (Docket No. 49-8), and Ex. O, IARC Glyphosate, from Monograph 112 (Docket No. 49-15).) However, several other organizations, including the EPA and other agencies within the World Health Organization, have concluded that there is no evidence that glyphosate causes cancer. (Prins Decl., Exs. E-L (Docket Nos. 29-8 through 29-15).)[6] As a result of the IARC's classification of glyphosate as probably carcinogenic, the OEHHA

---

[6] Although defendants do not object to plaintiffs' attachment of several glyphosate studies, defendants object to several declarations provided by plaintiffs, arguing that they are speculative and/or contain inadmissible hearsay. (Defs.' Objs. (Docket No. 46).) However, as defendants concede, evidence in support of a preliminary injunction application need not meet normal evidentiary standards, and the court may consider and give weight to inadmissible evidence in considering preliminary relief. See Heideman v. S. Salt Lake City, 348 F.3d 1182, 1188 (10th Cir. 2003); Johnson v. Couturier, 572 F.3d 1067, 1083 (9th Cir. 2009). The court therefore OVERRULES defendants' objections.

4

issued a Notice of Intent to List Glyphosate in November 2015. (Zuckerman Decl., Ex. Q (Docket No. 49-17).)

The OEHHA listed glyphosate as a chemical known to the state of California to cause cancer on July 7, 2017, and thus the attendant warning requirement takes effect on July 7, 2018. (Zuckerman Decl., Ex. T, OEHHA Chemicals Known to the State to Cause Cancer or Reproductive Toxicity List (December 28, 2017) (Docket No. 49-20).)

II. Discussion

Injunctive relief is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (citation omitted). In order to obtain a preliminary injunction, the moving party must establish (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in its favor, and (4) an injunction is in the public interest. Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).

A. Ripeness

Before the court examines the merits of plaintiffs' First Amendment claim, the court will consider whether this claim is ripe. "Ripeness is peculiarly a question of timing, designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." Thomas v. Anchorage Equal Rights Comm'n, 220 F.3d 1134, 1138 (9th Cir. 2000) (citations and internal punctuation omitted). Courts must examine whether a case is ripe

because their role "is neither to issue advisory opinions nor to declare rights in hypothetical cases, but to adjudicate live cases or controversies consistent with the powers granted the judiciary in Article III of the Constitution." Id.

The ripeness inquiry includes both "constitutional" and "prudential" components. Id. Under the constitutional component of standing, courts consider "whether the plaintiffs face a realistic danger of sustaining direct injury as a result of the statute's operation or enforcement, or whether the alleged injury is too imaginary or speculative to support jurisdiction." Id. (citations and internal quotations omitted). Under the prudential component, courts consider (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration. Id. at 1142. For the reasons discussed below, the court finds that plaintiffs' First Amendment challenge is ripe under both the constitutional and prudential inquiries.

First, defendants argue that plaintiffs' First Amendment challenge is unripe because plaintiffs may not have to provide any warning if their products' glyphosate levels are below the "safe harbor" level that will likely be adopted by the State before the warnings are required. However, regardless of the State's possible enactment of a safe harbor level, plaintiffs still face a significant risk of injury. The court recognizes that (1) Proposition 65 provides that no warning is required for a product where an exposure poses no significant risk assuming lifetime exposure at the level in question, Cal. Health & Safety Code § 25249.10; (2) the OEHHA has set specific safe harbor

6

levels for several chemicals, and no warnings are required if the daily exposure caused by a product is below that safe harbor level, Cal. Code Regs. tit. 27 § 25705; and (3) the OEHHA has proposed a safe harbor level of 1,100 micrograms per day for glyphosate, and the corresponding regulation setting that level is expected to be completed by July 1, 2018, (Fernandez Decl. ¶ 9 (Docket No. 48)).

Nevertheless, assuming plaintiffs' products were tested and found to contain concentrations of glyphosate below the safe harbor level as set by Cal. Code. Regs. tit. 27 § 25705, plaintiffs would still have no reasonable assurance that they would not be subject to enforcement action. Plaintiffs have provided evidence that private plaintiffs have brought enforcement actions for various chemicals notwithstanding a defense of compliance with the safe harbor level for those chemicals, including where the California Attorney General said a proposed enforcement suit had no merit.[7] Thus, plaintiffs, who

---

[7] (See, e.g., Norris Decl. ¶¶ 8-10 (Docket No. 66-7) (discussing lawsuit lasting for 6 years brought against McDonald's Corporation and other restaurants based on allegations that their cooked chicken exposed Californians to the listed carcinogen "PHIP," despite a California Attorney General determination that the level of PHIP in cooked chicken fell far below the level that would require a warning under Proposition 65); Norris Decl. ¶¶ 28-31 (discussing Proposition 65 actions brought against restaurants and food companies notwithstanding safe harbor level for acrylamide set in 1990).) See also Sciortino v. PepsiCo, Inc., 108 F. Supp. 3d 780, 786 (N.D. Cal. 2015) (denying motion to dismiss where parties disputed whether defendant's products exceeded the safe harbor level); Envtl. Law Found. v. Beech-Nut Nutrition Corp., 235 Cal. App. 4th 307, 314 (1st Dist. 2015) (discussing Proposition 65 enforcement action where safe harbor defense was litigated at trial and noting that defendants had the burden of showing that the level of chemicals in their products did not exceed the safe harbor); CKE Rests.,

have stated they intend to give no warning based on their constitutional right against compelled speech, face a credible threat of enforcement as a result of exercising such right, regardless of the possible enactment of a safe harbor level for glyphosate.[8]

Defendants claim that enforcement actions would be unlikely in the event that a product did not exceed the safe harbor level for glyphosate, citing both the steps required to file suit (which require 60 days' notice and the filing of a certificate of merit) and the fact that the Attorney General will likely inform the private enforcer that (1) there was no violation, (2) an action was not in the public interest, and (3) the action would not warrant civil penalties and fees. Defendants also note that if the private enforcer refused to withdraw its notice of violation, the Attorney General would then post a letter on the Attorney General website stating that there

---

Inc. v. Moore, 159 Cal. App. 4th 262, 265 (2d Dist. 2008) (dismissing suit seeking declaration that private party could not initiate Proposition 65 litigation because safe harbor level was not exceeded).

[8] Plaintiffs have also provided evidence of likely lost sales if they do not provide Proposition 65 warnings on their products, regardless of whether the state establishes a safe harbor level for glyphosate. At least one major retailer has explained that it will no longer carry glyphosate-based herbicides without any Proposition 65 warning and will remove these herbicides by July 8, 2018, regardless of any safe harbor level that may be set by California. (Martin Decl. ¶ 3 (Docket No. 66-15).) Businesses who wish to comply with Proposition 65's warning requirement are also faced with the costs of compliance in advance of the July 7, 2018 deadline in the event that a safe harbor level is not established by that deadline. See, e.g., Core-Mark Int'l v. Mont. Bd. of Livestock, 701 F. App'x 568, 571 (9th Cir. 2017) (cost to separately package, label, and inventory milk destined for sale in Montana were concrete injuries).

was no merit to the proposed enforcement action. Notwithstanding these purported barriers, one California Court of Appeal has explained that the instigation of Proposition 65 enforcement actions is "easy – and almost absurdly easy at the pleading stage and pretrial stages." See Consumer Def. Grp. v. Rental Hous. Indus. Members, 137 Cal. App. 4th 1185, 1215 (4th Dist. 2006).

Further, in order to take advantage of the safe harbor, plaintiffs would be required to test their products to determine whether their products exceeded the safe harbor level, incurring the attendant costs, which in itself is a cognizable injury. See, e.g., Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, 154-55 (2010) (farmers seeking injunctive relief had standing based on, inter alia, the cost of testing crops that would be required if injunction was not granted).[9]

Second, defendants argue that plaintiffs' First Amendment challenge is unripe because even if their products

---

[9] (See also Inman Decl. ¶¶ 7-9; Novak Decl. ¶¶ 4-6; Hurst Decl. ¶¶ 5-7; Mehan Decl. ¶¶ 4-6; Stoner Decl. ¶¶ 6-9; Kessel Decl. ¶ 4; Jackson Decl. ¶¶ 5-10; McCarty Decl. ¶¶ 11-13; Brinkmeyer Decl. ¶¶ 5-6; Martinson Decl. ¶¶ 5-9; Heering Decl. ¶¶ 37, 39-41; and Wogsland Decl. ¶¶ 5-9 (Docket Nos. 29-52 through 29-59 and 29-61 through 29-63) (explaining that testing requirement or change in production to avoid testing requirements would cause significant changes to farmers' operations, increase costs, and put them at a competitive disadvantage); Supp. Stoner Decl. ¶¶ 7-8; Supp. Jackson Decl. ¶6; Supp. Hurst Decl. ¶¶ 5-7; and Supp. Inman Decl. ¶¶ 7-9 (Docket No. 66-12 through 66-16) (farmers stating that they do not test their crops for glyphosate and were not required to do so by the EPA); Heering Decl. ¶ 10 (Docket No. 66-6) (explaining that farmers do not have to separately test crops for herbicide residue under federal law because herbicide labeling laws already require that herbicides, if used according to the labeling instructions, will not result in an exposure that exceeds the EPA's tolerance for a given crop).)

exceed the safe harbor level plaintiffs may defend any enforcement action by showing their products do not pose a significant cancer risk. However, that would merely be an affirmative defense which plaintiffs would have to assert once the enforcement action is brought against them,[10] and facing enforcement actions, or even the possible risk of enforcement actions, are cognizable injuries. See, e.g., Italian Colors Rest. v. Becerra, 878 F.3d 1165, 1173 (9th Cir. 2018) (party had standing because "even if the Attorney General would not enforce the law, [the statute under review] gives private citizens a right of action to sue for damages").

Third, defendants argue that plaintiffs' First Amendment challenge is unripe because it has not been determined what any required warning would have to say. However, as discussed in detail below in the court's discussion of the likelihood of success on the merits, any warning which plaintiffs might be able to devise consistent with defendants' demands under the regulations interpreting Proposition 65 would be inconsistent with plaintiffs' First Amendment rights.

---

[10] See, e.g., Consumer Def. Grp., 137 Cal. App. 4th at 1214 (explaining that the burden shifting provisions of Proposition 65 "make it virtually impossible for a private defendant to defend a warning action on the theory that the amount of carcinogenic exposure is so low as to pose 'no significant risk' short of actual trial") (citing Cal. Health & Safety Code § 25349.10(c)) (warning requirement shall not apply to "[a]n exposure for which the person responsible can show that the exposure poses no significant risk assuming lifetime exposure at the level in question . . . based on evidence and standards of comparable scientific validity to the evidence and standards which form the scientific basis for the listing of such chemical," and "[i]n any action brought to enforce [the warning requirement], the burden of showing that an exposure meets the criteria of this subdivision shall be on the defendant.").

B.  Likelihood of Success on the Merits

As in initial matter, plaintiffs have not shown a likelihood of success on the merits of their claim that the listing of glyphosate violates the First Amendment, because the listing is government speech, not private speech. "The Free Speech Clause restricts government regulation of private speech; it does not regulate government speech." Pleasant Grove City v. Summum, 555 U.S. 460, 467 (2009). California's listing of chemicals it purportedly knows to cause cancer is neither a restriction of private speech nor government-compelled private speech. The fact that the listing triggers Proposition 65's warning requirement does not transform the listing itself into government-compelled speech. Indeed, glyphosate has been listed by California since July 2017, and plaintiffs have not been required to provide any warnings. It is only the upcoming July 2018 deadline for providing the Proposition 65 warning that compels private speech. Thus, plaintiffs have not shown a likelihood of success on the merits of their claim that the listing of glyphosate violates the First Amendment.

Similarly, plaintiffs have not shown a likelihood of irreparable harm should the court fail to enjoin the listing of glyphosate, because any harm that plaintiffs might suffer is caused by the warning requirements of Proposition 65, rather than the listing itself. Notably, plaintiffs do not claim that they have already suffered any injury as a result of the listing, but only allege that they will suffer injury as the warning requirement deadline approaches and takes effect. In other words, any alleged irreparable injury could be prevented directly

11

by enjoining the warning requirement. Accordingly, the court will deny a preliminary injunction based on plaintiffs' claim that the glyphosate listing violates the First Amendment.

A different analysis is required for the warning requirement, as it compels commercial speech. In Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio, 471 U.S. 626, 651 (1985), the Supreme Court held that the government may require commercial speakers to disclose "purely factual and uncontroversial information" about commercial products or services, as long as the "disclosure requirements are reasonably related" to a substantial government interest and are neither "unjustified [n]or unduly burdensome." See also CTIA-The Wireless Ass'n v. City of Berkeley, 854 F.3d 1105, 1118 (9th Cir. 2017).

The State has the burden of demonstrating that a disclosure requirement is purely factual and uncontroversial, not unduly burdensome, and reasonably related to a substantial government interest. See Zauderer, 471 U.S. at 658-59; Ibanez v. Fla. Dep't of Bus. & Prof'l Regulation, Bd. of Accountancy, 512 U.S. 136, 146 (1994). The dispute in the present case is over whether the compelled disclosure is of purely factual and uncontroversial information. In this context, "uncontroversial" "refers to the factual accuracy of the compelled disclosure, not to its subjective impact on the audience." CTIA, 854 F.3d at 1117-18. Further, "a statement may be literally true but nonetheless misleading and, in that sense, untrue" and therefore unconstitutionally compelled private speech under Zauderer. Id. at 1119; see also Am. Meat Inst. v. U.S. Dep't of Agric., 760

12

F.3d 18, 27 (D.C. Cir. 2014) (recognizing possibility that required factual disclosures "could be so one-sided or incomplete that they would not qualify as 'factual and uncontroversial'") (citation omitted).

Defendants argue that any warning for glyphosate that incorporates the current safe-harbor warning language "known to the state of California to cause cancer" or ("known to cause cancer") will be truthful and not misleading because Proposition 65 and its implementing regulations state that chemicals are "known" to the State to cause cancer when, inter alia, they are classified by the IARC as "[p]robably carcinogenic to humans" and there is "sufficient evidence of carcinogenicity in experimental animals." See Cal. Code Regs. tit. 27 § 25904(b). Because the IARC classified glyphosate as a probable carcinogen and there was sufficient evidence of carcinogenicity in animals, defendants argue that California does in fact "know" that glyphosate causes cancer under the applicable regulations, and its warning is factually accurate.

While it may be literally true that California "knows" that glyphosate causes cancer as the State has defined that term in the statute and regulations, the required warning would nonetheless be misleading to the ordinary consumer. See, e.g., CTIA-The Wireless Ass'n v. City and County of San Francisco, 827 F. Supp. 2d 1054, 1062-63 (9th Cir. 2011), aff'd, 494 F. App'x 752 (9th Cir. 2012) (granting preliminary injunction in part because required fact sheet was misleading because it failed "to explain the limited significance of the WHO 'possible carcinogen' classification," which implied that radiofrequency energy from

13

cell phones was "more dangerous than it really is," and explaining that the fact sheet should state that "RF Energy has been classified by the World Health Organization as a possible carcinogen rather than as a known carcinogen or a probable carcinogen and studies continue to assess the potential health effects of cell phones.").

Ordinary consumers do not interpret warnings in accordance with a complex web of statutes, regulations, and court decisions, and the most obvious reading of the Proposition 65 cancer warning is that exposure to glyphosate in fact causes cancer. A reasonable consumer may understand that if the warning says "known to cause cancer," there could be a small minority of studies or experts disputing whether the substance in fact causes cancer. However, a reasonable consumer would not understand that a substance is "known to cause cancer" where only one health organization had found that the substance in question causes cancer and virtually all other government agencies and health organizations that have reviewed studies on the chemical had found there was no evidence that it caused cancer. Under these facts, the message that glyphosate is known to cause cancer is misleading at best.

The court also rejects defendants' arguments that the warning requirement is permissible under Zauderer because (1) Proposition 65 does not require plaintiffs to use the language "known to the state of California to cause cancer," and (2) plaintiffs may not have to provide warnings if their products fall below the safe harbor level that will likely be adopted. Under the applicable regulations, in order for a warning to be

14

per se clear and reasonable, the warning must state that the chemical is *known* to cause cancer. California regulations also discourage, if not outright prohibit, language that calls into doubt California's knowledge that a chemical causes cancer.[11] Notably, defendants provide no example of a more detailed warning explaining the debate regarding glyphosate's carcinogenicity that would pass muster under Proposition 65 and the applicable regulations; and at oral argument, defense counsel repeatedly rejected various alternative warnings proposed by the court which would provide more context or use more accurate language. Defendants have the burden of showing that the speech they wish to compel is factually accurate and uncontroversial. See Zauderer, 471 U.S. at 658-59; Ibanez, 512 U.S. at 146.[12]

On the evidence before the court, the required warning for glyphosate does not appear to be factually accurate and uncontroversial because it conveys the message that glyphosate's carcinogenicity is an undisputed fact, when almost all other regulators have concluded that there is insufficient evidence that glyphosate causes cancer. For example, the EPA has reviewed studies regarding the carcinogenicity of glyphosate multiple

---

[11] See Cal. Health & Safety Code § 25249.6; Cal. Code Regs. tit. 27 §§ 25601 and 25603.2; Cal. Code Regs. tit. 11 § 3202(b).

[12] Indeed, it is not clear that there is any warning which would provide the necessary context regarding glyphosate's possible cancer risk, given that California's regulations appear to make it impossible for plaintiffs to explain in the warning that the IARC's determination is contrary to that reached by other organizations, or that the IARC did not find that glyphosate causes cancer in humans, but that it found that glyphosate was probably carcinogenic based on sufficient evidence in experimental animals and limited evidence in humans.

15

times and has determined each time that there was no or insufficient evidence that glyphosate causes cancer, most recently in September 2016.[13] Several international agencies have likewise concluded that there is insufficient evidence that glyphosate causes cancer, including the European Commission's Health and Consumer Protection Directorate-General, multiple divisions of the World Health Organization besides the IARC, and Germany's lead consumer health and safety regulator. (Prins Decl., Exs. I, J, K, L (Docket Nos. 29-12, 29-13, 29-14, 29-15).)[14]

It is inherently misleading for a warning to state that a chemical is known to the state of California to cause cancer based on the finding of one organization (which as noted above, only found that substance is probably carcinogenic), when apparently all other regulatory and governmental bodies have found the opposite, including the EPA, which is one of the bodies

---

[13] (See Prins Decl., Ex. E (Docket No. 29-8) (EPA renewal of glyphosate registration under the Federal Insecticide, Fungicide, and Rodenticide Act); Prins Decl., Ex. F (Docket No. 29-9) (2014 EPA review of more than 55 epidemiological studies concluding that "that this body of research does not provide evidence to show that glyphosate causes cancer, and it does not warrant any change in EPA's cancer classification for glyphosate."); (Prins Decl., Ex. P (Docket No. 29-20) (EPA's Office of Pesticide Programs 228-page paper considered "23 epidemiological studies, 15 animal carcinogenicity studies, and nearly 90 genotoxicity studies for the active ingredient glyphosate" and concluded that "[t]he available data at this time do no[t] support a carcinogenic process for glyphosate").)

[14] Notably, in 1997 and 2007, California's own OEHHA examined studies of glyphosate to set public health goals for drinking water, both times determining that glyphosate did not pose a cancer risk. (Prins. Decl., Exs. G, H (Docket Nos. 29-10, 29-11).)

16

California law expressly relies on in determining whether a chemical causes cancer. The court expresses no opinion as to whether a statement that a chemical is known to cause cancer is factually accurate and uncontroversial where there is stronger evidence in support of the chemical's carcinogenicity. However, here, given the heavy weight of evidence in the record that glyphosate is not in fact known to cause cancer, the required warning is factually inaccurate and controversial. See CTIA, 854 F.3d at 1119; Am. Meat Inst., 760 F.3d at 27.

The court's First Amendment inquiry here boils down to what the state of California can compel businesses to say. Whether Proposition 65's statutory and regulatory scheme is good policy is not at issue. However, where California seeks to compel businesses to provide cancer warnings, the warnings must be factually accurate and not misleading. As applied to glyphosate, the required warnings are false and misleading. Plaintiffs have thus established a likelihood of success on the merits of their claim that the warning requirement violates their First Amendment rights.[15]

C. Irreparable Harm

The Ninth Circuit has explained that "[i]rreparable harm is relatively easy to establish in a First Amendment Case." CTIA, 854 F.3d at 1123. "[A] party seeking preliminary injunctive relief in a First Amendment context can establish

---

[15] Because the court finds that warning requirement violates plaintiffs' First Amendment rights on this ground, the court does not reach the issue of whether the warning is reasonably related to a substantial government interest or imposes an undue burden.

irreparable injury . . . by demonstrating the existence of a colorable First Amendment claim." Id. (quoting Sammartano v. First Judicial Dist. Court, 303 F.3d 959, 973 (9th Cir. 2002)). Moreover, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Valle Del Sol Inc. v. Whiting, 709 F.3d 808, 828 (9th Cir. 2013) (quoting Elrod v. Burns, 427 U.S. 347, 373 (1976)). Here, because plaintiffs have established that they are likely to succeed on their First Amendment claim as to Proposition 65's warning requirement, they have also established that they will likely suffer irreparable harm if the warning requirement is not enjoined as to glyphosate.[16]

D. Balance of Equities and Public Interest

When the government is a party, the balance of equities and public interest factors merge. Drakes Bay Oyster Co. v. Jewell, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing Nken v. Holder, 556 U.S. 418, 435 (2009)). To determine the balance of equities, the court must "balance the interests of all parties and weigh the damage to each." Stormans, Inc. v. Selecky, 586 F.3d 1109, 1138 (9th Cir. 2009) (citation omitted).

While the court recognizes that the state has a significant interest in protecting its citizens and informing

---

[16] Plaintiffs also claim that the warning requirement will cause several other harms including damage to the reputation and goodwill of plaintiffs and their products, loss of customers, the cost and burden of testing, and disruption to supply chains and existing business practices. Because the court finds that plaintiffs have shown a likelihood of irreparable harm based on the likely infringement of their First Amendment rights, the court expresses no opinion as to the likelihood of these other injuries or whether any such alleged harms are irreparable.

them of possible health risks, the Ninth Circuit has consistently "recognized the significant public interest in upholding First Amendment principles." Doe v. Harris, 772 F.3d 563, 583 (9th Cir. 2014) (quoting Sammartano, 303 F.3d at 974). Further, California "has no legitimate interest in enforcing an unconstitutional" law. See KH Outdoor, LLC v. City of Trussville, 458 F.3d 1261, 1272 (11th Cir. 2006). Providing misleading or false labels to consumers also undermines California's interest in accurately informing its citizens of health risks at the expense of plaintiffs' First Amendment rights. Accordingly, the balance of equities and public interest weigh in favor of enjoining Proposition 65's warning requirement for glyphosate.

As plaintiffs have shown that they are likely to succeed on the merits of their First Amendment claim, are likely to suffer irreparable harm absent an injunction, and that the balance of equities and public interest favor an injunction, the court will grant plaintiffs' request to enjoin Proposition 65's warning requirement for glyphosate.

IT IS THEREFORE ORDERED that plaintiffs' Motion for a Preliminary Injunction (Docket No. 29) be, and the same hereby is, GRANTED IN PART. Plaintiffs' request for a preliminary injunction enjoining defendants from listing glyphosate as a chemical known to the State of California to cause cancer under California Health & Safety Code § 25249.8 is DENIED. Plaintiffs' request for a preliminary injunction enjoining the warning requirement of California Health & Safety Code § 25249.6 as to glyphosate is GRANTED. Pending final resolution of this action,

defendants, their agents and employees, all persons or entities in privity with them, and anyone acting in concert with them are hereby ENJOINED from enforcing as against plaintiffs, plaintiffs' members, and all persons represented by plaintiffs, California Health & Safety Code § 25249.6's requirement that any person in the course of doing business provide a clear and reasonable warning before exposing any individual to glyphosate.

Dated: February 26, 2018

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE